LOT MASTERS, et al.

v.

KEVIN GIBBS

No. 1579-89-4

Decided September 18, 1990

COUNSEL

Joseph C. Veith, III (Montedonico & Mason, on brief), for appellants.

Peter J. Jones, for appellee.

OPINION

**DUFF, J.**—The issue presented on this appeal from the Industrial Commission is whether the employer's application for hearing sought only a credit for the overpayment of compensation or also sought termination of the outstanding award. The commission held that the application sought only a credit and did not seek vacation of the outstanding award. We agree and affirm.

Kevin Gibbs injured his neck in an industrial accident on December 10, 1987. The claim was voluntarily accepted as compensable and temporary total benefits were paid pursuant to an award through December 19, 1988. In early November 1988, through the efforts of a private investigator, the employer and carrier learned that Gibbs had been working part-time washing windows for Zayre Department Store since March 1988, earning $50 per week. Upon receipt of this information, the employer filed its application for hearing, by virtue of which compensation was suspended pending the results of the hearing. The application was filed by use of a pre-printed form of the commission, and the proper interpretation of its contents is the issue before us.

The form application is addressed to the claimant and advises: "You are hereby notified that worker's compensation payments will be suspended on the date through which compensation has been paid as indicated below, if approved by the Industrial Commission for the following reason. . . ."

Thereafter follows four numbered paragraphs, each representing different reasons why the change of condition is sought. The employer selects the applicable paragraph and simply fills in the blank spaces. In this case, paragraphs two and four were executed and read as follows:

■ You returned to work on up to one year at an average weekly wage of $50.00
■ Other (complete details and documentary evidence): relief is requested pursuant to Section 65.1-100.3 by way of either a credit or finding as grounds for action against the claimant. (See attached)[1] claimant not totally

---

[1] Attached to the form application was a copy of the private investigator's report dated November 10, 1988.

disabled.

Finally, the last printed paragraph on the form advises the claimant: "If the Commission determines from the preliminary evidence that payments should be suspended, you will receive notice of the date, time, and place of hearing. Following a hearing, the Commission will then determine whether or not payments should be terminated." The commission construed the language on the application as seeking a credit for the overpayment of compensation, gave credit therefor, and reinstated payments under the original temporary total award, as there was evidence that the claimant had not been working since September 7, 1988.

The employer and carrier contend that their application raised the initial issue of whether Gibbs had returned to part-time work as alleged. This allegation was admitted. The argument continues that, upon such admission, the commission should have vacated and set aside its prior award for temporary total benefits and entered an award for temporary partial disability benefits pursuant to Code § 65.1-55. Then, such award should have been suspended during the period for which the employer was entitled to a credit for overpayments. Thereafter, the argument concludes, if claimant was totally disabled it was up to him to file his own application for the resumption of temporary total benefits. As Gibbs filed no application in this case, the commission erred in automatically reinstating the temporary total award.

Had the commission vacated or terminated the prior temporary total award, the burden would have been on Gibbs to file an application and produce evidence establishing continuing disability. However, the commission did not terminate the prior award. Likewise, the application form did not contain a request to vacate the award. The narrow issue before us is whether the language of the application form fairly envisioned or encompassed the results which emanated from the hearing. We hold that it did.

The commission held that when the employer filed its application seeking credit, it did not ask for the outstanding award to be vacated, but simply stated that the employee was not totally incapacitated. Code § 65.1-100.3, cited by the employer in paragraph

■ of the application, makes no provision for vacating outstanding awards. Thus, the only basis supporting the contention that the application sought vacation of the award would be by implication or inference from the printed language used on the form.

■ It is true that the first paragraph advised Gibbs that his compensation payments would be suspended. However, to "suspend" cannot fairly be equated with "vacate." Webster's Ninth New Collegiate Dictionary 1189 (1983) defines "suspend" as: "1: to debar temporarily from a privilege, office or function, a: to cause to stop temporarily." We believe this to be the precise meaning intended by the use of the word in the application. The payments of benefits were to be temporarily suspended until the evidence was taken and a decision rendered.

The employer contends, however, that paragraph [2] of the form application necessarily envisioned the vacation of the prior award once it was established that the claimant had returned to work. However, in the present case the record shows that the part-time work of washing windows had ceased some eight months prior to the hearing before the deputy commissioner. The last medical report in the commission's file, dated August 16, 1988, reflected that Gibbs continued to be disabled from work due to the industrial accident. Under such circumstances, and with the original temporary total award outstanding, albeit suspended, the commission was not required to vacate the same simply because there was a period of temporary work, limited in both duration and frequency. Such a requirement would elevate form and procedure above substance and would run contrary to the purposes of the Workers' Compensation Act. However, in so holding, we do not condone Gibbs' actions in securing other employment without notifying the employer.

Nor do we find *K & L Trucking Co. v. Thurber*, 1 Va. App. 213, 337 S.E.2d 299 (1985), controlling. The facts, as well as the issues, clearly distinguish *Thurber* from this case. In *Thurber*, the claimant had been dismissed from his position of selective employment because he had failed to notify his employer of the reasons for his absence from work. Claimant then sought reinstatement of full benefits. The deputy commissioner denied benefits and no appeal was taken to the full commission. Thereafter, a second hearing was held upon application of the employer. At this hearing claimant was allowed to show that he, not the employer, had pro-

cured the position of selective employment from which he was discharged, and that his failure to report to work was related to his earlier, compensable injury. We reversed, stating that the commission erred in allowing claimant to produce such evidence. *Id.* at 218, 337 S.E.2d at 302. Claimant had every opportunity in the initial hearing to produce the evidence and failed to do so. He was thus barred by res judicata from doing so at the second hearing. *Thurber* did not involve an interpretation of the language contained in a printed form nor did it decide whether the commission is required to terminate an existing award upon the peculiar facts presented by this record.

Accordingly, the opinion appealed from is

*Affirmed.*

Koontz, C.J., and Keenan, J., concurred.